GERTRUDE MARY DAIGER

vs.

FREDERICK DAIGER.

} DECEMBER TERM, 1850.

[ALIMONY—DIVORCE A MENSA ET THORO.]

UPON the application of the wife, who was separated from her husband, and had no means of living, or of defraying the expenses of her suit for a divorce, for alimony *pendente lite*, and money to carry on her suit, the practice is to make the allowance, without an examination into the merits of the cause.

The rule is inflexible, that under all circumstances, and entirely irrespective of the merits, the marriage being proved, or admitted, the wife will be allowed temporary alimony, and money to prosecute or defend the suit, when separated from her husband, unless she has an income of her own sufficient for those purposes.

Upon the application, by the wife, for a divorce *a mensa et thoro*, under the 3d section of the act of 1841, ch. 262, upon the charge of cruelty of treatment, it will not be sufficient for her to show mere petulance, and rudeness, and sallies of passion on the part of the husband, but there must be a series of acts of personal violence, or danger of life, limb, or health, to justify a decree of separation.

Great caution and discrimination ought to be used upon this subject, and even if acts of personal violence are shown, it is proper for the court to consider whether they were without cause or for trivial causes, or the result of provoking language on the part of the wife, pushing the patience of the husband to extremity.

[The petition in this case, for a divorce *a mensa et thoro*, was filed in the equity side of Baltimore County Court, on the 31st of October, 1850. It alleges the marriage of the petitioner with the defendant on the 17th of February, 1848, that since said marriage, the petitioner has been a correct, faithful, and irreproachable wife. That her said husband, unmindful of his duties and obligations, has habitually treated her with cruelty and violence. The petition then sets forth specific acts of cruel treatment, such as threatening to cut her throat with an open razor, striking her severe blows with his clenched hands and fists, and on several occasions, knocking her down, &c. That in consequence of this cruel treatment, she was compelled some time in the winter of 1850, to leave the house, and society of her said husband. The prayer is for a divorce *a mensa*, alimony, &c.

The answer of the defendant was filed on the 1st of November, 1850, and admits the marriage as stated in the petition, but explicitly denies all charges of unkindness, cruelty, or violence, towards the petitioner, as alleged in her petition. He also denies that the petitioner was at any time a correct, faithful and irreproachable wife, but on the contrary, charges, that he has been grossly deceived by her, and has, from such deception, married a notorious and common prostitute. Various acts of adultery, drunkenness, and vicious and indecent conduct on her part, are then set forth, and in conclusion, the answer denies that the petitioner is entitled to ask for a divorce of any sort, or to alimony, but if consistent with the course and jurisdiction of the court, under said petition, respondent asks that a decree *a vinculo* may be passed in his favor.

The cause being removed to this court, upon suggestion of the respondent, the petitioner on the 12th of November, 1850, filed a petition for alimony *pendente lite*, and for an allowance of money to prosecute the suit. Upon the hearing of this petition, the following opinion was delivered :]

THE CHANCELLOR:

This case comes before the court, upon the petition of the wife, who is the complainant in the cause, for an allowance of alimony, *pendente lite*, and money to carry on the suit, and the power of the court to make the allowance, has not been, nor can it be, denied. The opposition to the application, not being placed upon the ground of defect of power in a proper case, but upon the idea, that under the special circumstances of this case, it would be improper to exercise it. My impression, when the petition was first presented, was, that the court, at this stage of the cause, might, to some extent, at least, examine into the merits, and the order of the 12th of November last, authorizing the parties to take depositions, was passed under that impression, but, upon looking into the authorities, I have come to the conclusion, that such is not the practice, and that if an examination was instituted now, and a decision made, adverse to the application of the wife, it might have the

effect of defeating her suit altogether, before the usual oppor-
tunity has been afforded of developing the full merits of the
case; for if it be true, and in the absence of proof to the con-
trary, it must be assumed to be true, that she has no means of
living, or of defraying the expenses of the suit, and if the
court, upon a preliminary proceeding like the present, and be-
fore she is furnished with the means of procuring the attend-
ance of witnesses, undertake to investigate, and decide upon
the merits of the case, it is obvious that very few suits by mar-
ried women against their husbands, can ever be prosecuted
successfully. The application presupposes, and is founded
upon the allegation, that the wife is destitute of the pecuniary
means of carrying on her suit, and, therefore, at that stage of
the cause, to require her to show merits, or to engage in a con-
test with her husband, in regard to the merits, would expose
her to almost inevitable defeat, not only in the particular appli-
cation, but at the final hearing, for which, if her prayer for
money to conduct the suit fails, she would be wholly unpre-
pared.

The authorities, which have been collected with great dili-
gence, by the counsel engaged in the cause, fully support these
views, and show, that in suits, instituted either by the hus-
band or the wife, the latter is a privileged suitor, as to costs
and alimony. *Shelford on Marriage and Divorce*, 533, et seq.

It is believed, that no case can be found, in which the wife,
living separate from her husband, and without an income com-
petent to her support, and the maintenance of the suit, has been
denied temporary alimony, and an allowance to enable her to de-
fend herself, or prosecute her suit against her husband. In
*Wright* vs. *Wright*, 1 *Edwards*, 62, the vice chancellor said,
"an allowance to a wife of alimony, and money to carry on a
suit, is almost a matter of course;" that "in a suit, by a hus-
band against a wife, for adultery, she is entitled to the means
of making her defence," and in that case, the vice chancellor
refused to consider affidavits, tending to criminate the wife, say-
ing, "he would not go into the merits at that stage of the
cause," and in *Smith* vs. *Smith*, *same book*, 253, temporary ali-

30

mony and money to carry on the suit, was allowed the wife, though the husband put in a plea, supported by affidavits denying the marriage. In the case of *Stanford* vs. *Stanford*, *ibid.*, 317, the wife was allowed temporary alimony, up to the final decree, notwithstanding a jury, upon a feigned issue, had found a verdict of adultery against her. The cases of *Robertson* vs. *Robertson*, and *Murray* vs. *Murray*, reported in the same book, 361 and 382, furnish further, and strong evidence of the inflexibility of the rule, that under all circumstances, and entirely irrespective of the merits, the marriage being admitted or proved, the wife will be allowed temporary alimony, and money to prosecute or defend the suit, when separated from her husband, unless she has an income of her own, sufficient for those purposes.

The case of *Hammond* vs. *Hammond*, 1 *Clarke*, 151, in which most of the previous decisions in New York, were considered, is strong confirmation of the rule, and it will be found, upon examination of the cases in the English ecclesiastical courts, that the same principle prevails there. *Bird* vs. *Bird*, 5 *Eng. Eccl. Rep.*, 366, and the note to the case, show how firmly the rule is adhered to, so far as relates to the liability of the husband to maintain his wife, and defray the expenses of the suit, during its progress, though at its termination, in a case of gross fraud, the wife may be condemned in costs, and *Fitzgerald* vs. *Fitzgerald*, *ibid.*, 472, is a further confirmation of the rule.

It appears, by some of the cases in New York, that where the wife is the defendant, in a suit for a divorce, brought by the husband, upon the charge of adultery, she will not be allowed alimony pending the litigation, and to enable her to defend the suit, unless, in her petition, she denies, on oath, the charge of adultery, or show a valid defence, by reason of condonation, or otherwise; but if she does make such denial, or otherwise present a valid defence, the court will not undertake to investigate or decide the merits, and will make the allowance. *Wood* vs. *Wood*, 2 *Paige*, 108; *Osgood* vs. *Osgood*, *ib.*, 621.

In this case, the bill was filed by the wife, and she alleges,

that her conduct, during the entire period of her marriage, has been correct, faithful and irreproachable; and these averments are verified by affidavit. There can, therefore, be no doubt, I think, notwithstanding the criminations of the answer, which charges her with adultery, and intoxication, that she is entitled to temporary alimony, and money to carry on the suit, and I feel myself bound to make such allowance, without, in any manner, intimating an opinion upon the merits. The only question, then, is, as to the amount of this allowance, and although the evidence in regard to the circumstances of the defendant is a little contradictory, I consider it better to proceed to make the allowance now, than subject the parties to the additional expense of taking proof upon the subject. The allowance will be made with due regard to the moderate circumstances of the defendant, and upon the presumption, (warranted by the proof,) that the wife is capable of making some exertion for her own support.

It is, therefore, ordered, this 20th day of December, 1850, that the defendant pay to the plaintiff, the sum of one hundred dollars a year, in quarterly payments, to be computed from the first day of January next; and that this allowance is to continue, until further order, and be subject to variation as future circumstances may require. And it is further ordered, that the defendant, within thirty days from the date of this order, pay the plaintiff the sum of forty dollars, to enable her to carry on this suit.

[Upon the hearing of the cause upon the merits, the following opinion was delivered, which renders a statement of the evidence, taken under the commision, unnecessary :]

The Chancellor :

This is an application for a divorce, *a mensa et thoro*, under the provisions of the 3d section of the act of 1841, ch. 262, which authorizes the Chancellor, or the county courts, as courts of equity, to grant such qualified divorces, upon the ground, *first*, of cruelty of treatment, and, *secondly*, of excessive vicious conduct, abandonment and desertion. The appli-

cation here, is by the wife, upon the charge of "cruelty of treatment," which, upon the allegation of the petitioner, became so excessive and intolerable, as to compel the petitioner to leave the house and society of her husband, sometime early in the year 1850, which she did.

The single inquiry, therefore, is, whether the petitioner, upon the evidence, has made out such a case as entitles her to the aid of the court.   Has she proved that her husband has been guilty of cruelty of treatment towards her, as these words are understood in the act of Assembly ?   The answer explicitly denies the charge, and recriminates upon the wife, imputing to her, both before and since the marriage, conduct of the most reprehensible character, and a vast mass of evidence has been taken, and a great deal of time consumed, in the discussion of this evidence.   I do not deem it necessary, and I certainly feel no inclination, to follow counsel in their investigation of facts, not essential to the point to be decided ; and my disinclination to do so, is not diminished, in this case, by the nature of these facts.

I conceive, that the question, properly presented in this case, may be decided, without pronouncing any opinion upon the truth of the charges contained in the answer, affecting the chastity or sobriety of the complainant.   The husband, is not here asking to be divorced upon the ground of adultery, or misconduct of his wife, in any other respect.   She is the complaining party ; praying for a separation from her husband, because, as she alleges, he has been guilty of "cruelty of treatment," and the question is, whether she has succeeded in establishing this allegation ; because, if she has not, the application must fail, whether the recriminatory charges are true or not.

I, therefore, shall express no opinion, one way or the other, upon the truth of these charges, and shall confine myself entirely to an examination of the charge of "cruelty," made by the complainant against the defendant.

In the recent case of Coles vs. Coles, which was an application for a divorce, a mensa et thoro, I had occasion to look into this subject, and to inquire, how the term "cruelty" is under-

stood in the English ecclesiastical courts, and by the canon law. And quoting the language of Mr. Chancellor Kent, in the case of *Barrere* vs. *Barrere*, 4 *Johns. Ch. Rep.*, 187, that "mere petulance and rudeness, and sallies of passion, might not be sufficient," it was decided, relying upon the authority of that distinguished judge, that "there must be a series of acts of personal violence, or danger of life, limb or health," to justify a decree of separation. That great caution, and discrimination ought to be used on this subject, and that even if acts of personal violence were shown, it was proper for the judge to consider, if they were without cause, or for trivial causes, or if they were the result of provoking language, on the part of the wife, pushing the patience of the husband to extremity.

Now, in this case, after an attentive examination of the evidence, and a full hearing of the counsel, I do not find proof of a series of acts of personal violence, or danger of life, limb or health, or indeed, any thing approaching to either, which would justify the court in decreeing a separation between the parties. The bill, therefore, must be dismissed.

M. HAZEL, HENRY STOUT, for Petitioner.
WM. J. WARD, for Defendant.